The next case on our docket is 22-40072, Huffman v. Activision Publishing, Inc. Good morning, Your Honors, and may it please the Court. My name is Jessica Lanier, and I represent Appellants. I've previously reserved five minutes for rebuttal. The trial court abused its discretion when it denied Activision's motion for attorney's fees. In the Fifth Circuit, it is the rule rather than the exception that fees should be awarded to a prevailing party in a copyright infringement action. Under positive black talk, fees should be awarded routinely, and indeed it is a quote-unquote rare case where fees should be denied the prevailing party. The trial court did not follow this rule. In fact, the trial court's opinion does not even cite the rule rather than exception parameter. Instead, the trial court determined that because, in its view, plaintiff's case was objectively reasonable before trial, plaintiff's case was therefore necessarily objectively reasonable at trial. Objective reasonableness is the only Fogarty factor that the trial court analyzed. The court therefore impermissibly treated objective reasonableness as the controlling factor in attorney's fees analysis. Finally, the court's determination that plaintiff's case at trial was objectively reasonable was a clearly erroneous assessment of the evidence because plaintiff's case at trial lacked factual support for his claims. Unless there are questions from the panel, I'd like to focus my argument this morning on two issues. First, why the district court's failure to analyze each of the Fogarty factors was an error of law and therefore an abuse of discretion. And second, why the court's objective reasonableness analysis was too narrow in its scope. I'll first discuss the inappropriate way the court afforded objective reasonableness. The trial court's order summarizes the parties' arguments. And for the court's reference, that's record excerpt pages 82 through 86. But then the court only analyzes objective reasonableness. And that analysis, for the court's reference, is record excerpt pages 86 through 87. And because this analysis was confined to objective reasonableness, the trial court ran afoul of both Kurtzang II and Batiste, both of which teach that while objective reasonableness should be afforded substantial weight, it should not be afforded controlling weight. Kurtzang II also notes that a trial court must also give due consideration to all other circumstances relevant to granting fees, not just objective reasonableness. To properly exercise discretion, a trial court must at least examine additional factors other than objective reasonableness. In pages 18 to 19 of Plaintiff's Brief, he identifies a couple of cases that he describes as illustrations of proper exercises of discretion in awarding fees. He argues in his brief that the trial courts in those cases behaved similarly to the trial court here. Not so. In each of the examples that Plaintiff identifies on pages 18 to 19 of his brief, Virgin Records, Bayes' Den, Creations Unlimited, and Positive Black Talk, the underlying trial court opinions analyze factors in addition to objective reasonableness. There are a number of other cases before the court that illustrate that this is the appropriate analytical framework. In 2020, in digital drilling, the Fifth Circuit remanded a denial of attorney's fees back to the district court. And the reason that it did so was that the district court did not apply the Fogarty factors. Now, the facts of that case are a little bit different than the facts before the court today, because the digital drilling trial court did not even apply the Fogarty factors at all. But that case illustrates that it is an abuse of discretion not to apply the Fogarty factors in attorney's fees analysis. What do you do with the Lenar Holmes case? The Lenar Holmes case, the Eastern District of Texas. The Southern District of Texas, 2015. Pardon me, Judge. Yes. In that case, the court noted that there had been some issues raised in pretrial motion practice that raised issues of first impression, if not in the Fifth Circuit, but at least in that district. The court gave some weight to the fact that the pretrial motion practice afforded an occasion to resolve those issues, but the court did not provide that dispositive weight in that case. Notably, Lenar Holmes is distinguishable from the facts before this court in a couple of other respects. The evidence to support the claims was more robust than in the case currently before the court. I'm sorry, I don't understand why it's not applicable. Given all the volume of pretrial motions and all the interesting issues and how your client wasn't successful in all of that and why that's not a relevant factor that the district court could take into consideration in refusing to give the fees. Certainly, Your Honor. And we do not maintain that that should be given no weight. Our position is that it should not be given controlling weight. Plaintiff has argued also in his brief that the Fifth Circuit has a rule that substantial weight is applied to pretrial motion practice, but the cases he cites for that are distinguishable and actually don't support that significant amount of weight to pretrial dispositive motions, regardless of whether those motions decide issues as a matter of first impression. Plaintiff cites Bayesden, I hope I'm pronouncing that case name correctly, and Positive Black Talk. But in each of those cases, the Fifth Circuit noted that the trial court opinion giving rise to the appeal took note of the pretrial motion practice, but did not afford it significant weight. Significant weight in that context is a term of art that plaintiff created for the purposes of this argument. But in this case, am I wrong that there were so many motions, motions on venue, motions on this, numerous issues of first impression. This was hard fought at every jot and tittle. And that's not a criticism, but it's just maybe that's a compliment at some level. But is that not accurate to say that? And several issues of first impression in the circuit were established in this case, and there were not clear rules before this case in the district courts in the circuit. And the court thought that was really important. And from the other cases, that is legitimate to think that's really important and say, given that, it's just not, you know, it wasn't unreasonable and we're going to say no here. In the discretion. Understood, Judge. And there's no dispute here that there was a substantial amount of pretrial motion practice. Plaintiff has classified many of those pretrial motion orders as resolving issues of unsettled law in the Fifth Circuit. Notably, though, the only issue of unsettled law that had bearing on the ultimate merits of the case, was the trial court's order with respect to defendant's summary judgment motion on the DMCA claim. There, the district court clarified that there was no in the Fifth Circuit original work requirement for 1202A, and that knowledge can be inferred from evidence of copying, from circumstantial evidence. But that is the only area of unsettled law resolved by the district court that had bearing on the ultimate merits. What about whether there was a jury trial? I mean, that seems like a really big issue, and that was unsettled, wasn't it? Yes, Your Honor. That had not been addressed with respect to infringer's profits in the Fifth Circuit before this case, to our knowledge. But again, that didn't have bearing on the ultimate merits of the infringement or the DMCA claim. It simply had bearing on whether plaintiff was entitled to a jury trial when he was seeking infringer's profits as a method of damages. I would like to illustrate for the Court just a couple of additional examples where district courts apply all of the Fogarty factors in their analysis, without belaboring the point, but it is critical to this case. In Berg v. M&F Western Products, that's an Eastern District of Texas case from 2021. There, though, the trial court found that the losing party's position was objectively unreasonable, even under the backdrop of awarding fees as the rule rather than the exception. Analyzing factors other than objective reasonableness was so important that the court continued, and it made observations about each of the other Fogarty factors. Likewise, for Geophysical Service v. TGS NOPEC, a Southern District of Texas case from 2020. Activision submits that the pattern, that the law here is clear, that proper attorney's fees analysis requires, quote, from Kurtzang, due consideration to all other circumstances relevant to granting fees, end quote, in order to weigh whether the interests of the Copyright Act are served by an award of fees. In failing to analyze the other Fogarty factors, regardless of the prevalence of pretrial motion practice in this case, the court did abuse its discretion. I'd next like to discuss the nature of the trial court's analysis on objective reasonableness. So would the answer be send it back for a more thorough analysis of the Fogarty factors? The Fifth Circuit has two options in Activision's view. There is sufficient fact and argument before the Fifth Circuit today such that the Fifth Circuit could reverse and direct the trial court to determine the award of fees that Activision is entitled to. Another option available to the Fifth Circuit, as you know, Judge, is remand for proper consideration of each of the Fogarty factors and an evaluation of whether Activision is entitled to fees. Specifically, which ones are inadequate? Which factors are inadequate? The court only analyzed objective reasonableness. Right. So what factors need more meat? Understood, Judge. The court did not analyze motivation. The court did not analyze compensation. And the court did not analyze deterrence. Facts and argument before the trial court in Activision's motion for attorney's fees gave the court ample grist to hold that each of those factors tilted in favor of an award of attorney's fees, but the court did not analyze any of those factors. Are we going to go through the whole argument without ever saying GI bro or profit? I'm happy to use those terms if the court wishes. No, I'm just, you know, we're at a law school setting, and I thought that this, filling in the details of what this very interesting case is about might be, but go ahead. Use your time wisely. Well, I actually do have a question about the art. What is the record show that Activision paid for the creation of the profit art? Of the profit image? Image, thank you. I do not know that number off the top of my head, Judge, but I do know a couple of other numbers. Sure. I know that the plaintiff paid $85 for an artist to draw the Arosa poster, and I know that at trial, without supporting his damages ask with any record support at all, he asked for $32 million. So he was seeking to parlay an $85 investment into a $32 million windfall, all without supporting his claims at trial with evidence. And the trial record, did Activision put on evidence about the process that it went through to create the profit image? Yes, Your Honor. We have referred to our evidence of independent creation as an avalanche's worth of evidence, and I think that description is apt. At trial, Activision put on testimony from the model who was cast to play profit in the photo shoot that gave rise to the profit image. He testified how he was cast. He testified about the process of the photo shoot. He testified that he was costumed by Petrol, which is a third-party vendor that Activision commissioned to facilitate the creation of the profit image. Activision also put on evidence of the process of creating concept art for Black Ops 4, the video game, for the profit iteration that was going to appear in the version of that particular franchise. Activision submitted multiple rounds of the development of that concept art, including the references that were used to create that concept art. So Activision presented an avalanche of evidence, and those are just some of the examples. I don't want to bore the Court by repeating the whole record, but Activision presented at trial abundant evidence of independent creation. So I guess what I'm not understanding is from the district court's order, if we look at the 12 v. 6 motion, right? I mean, the way the district court got this past a motion to dismiss was they looked at the two images, the allegations about the $85 poster, and said these are strikingly similar. And if we disagree with that, does that mean that we reverse and order fees? Because, I mean, the merits of that 12 v. 6 inquiry get somehow imported into the denial of your fee application, I take it. That is true, Your Honor. I see that my time is up, but if I may have additional time to answer your question. The 12 v. 6 motion, one of the issues addressed was whether the two images at issue, the profit image and the Arosa poster, were strikingly similar. Activision disagrees as a matter of law that there was any evidence to support striking similarity at the 12 v. 6 stage, at the motion for summary judgment, and certainly at trial. We presented evidence to plaintiff early in the life of the case in August of 2019 that outlined most of the evidence that we used to support independent creation at trial. The judge was aware of that evidence at the stages of the case. He determined that there was sufficient evidence to send that case to a jury with respect to striking similarity. But the standard for striking similarity is that the copying is of a nature, or the similarity is of a nature, that it can only be explained by copying. The test for striking similarity is that it is similarity of a character that precludes independent creation, prior common source, or coincidence. Activision showed that its image was independently created. Therefore, as a matter of law, striking similarity could not be found. And unless the panel has additional questions, I'll rest until rebuttal. Thank you, Counsel. Thank you. Mr. Zemo. May it please the Court. What I feel I should do first is talk about the characters because the Court has had questions about those. I'd like to start with the allegation that the poster was an $85 poster. Booker T. Huffman is a professional wrestler. In his 50s, he decided one way to extend his brand, since he wasn't throwing Hulk Hogan around anymore, was to – he'd always loved comic books. One of his wrestling heroes when he was a kid had a comic book based on his wrestling character. And so he happened to meet a comic book publisher from Dayton, Texas, who worked with him to publish two comic books. So the GI Bill character actually came out of those comic books. This artwork that's the subject of our lawsuit was at the very tail end of that process. So, yes, they paid an artist $85 for that poster, but that was the result of well over a year of publishing two comic books and working on the character. The striking similarity here, I'm glad the Court's interested in that. It's been a subject so far because that was the main issue in the 12B6 motion that was denied early in the case. Since Twombly and Iqbal, it's become my practice, when I deal with visual arts in a copyright case, to put the images in the complaint. That also means that they're fair game for a court to decide as a matter of law, there's not enough similarity here to let this case go forward. What's interesting about the motion practice at that point is we simply responded and said, look at the two images side by side. That's the circuit's test from Bridgman v. Array Systems, and it's been adopted by the Supreme Court in the Petrella case, where they cited a Second Circuit case, Peter F. Gayto, architect, to say, ultimately it comes down to the good eyes and common sense of the court. We didn't say it's strikingly similar because of these two things and these two things and these two things. We said just look at the two of them. The magistrate judge wrote his opinion recommending denial and said a reasonable jury could decide that they are strikingly similar. He didn't go into the these two factors, these two factors type analysis. The district court didn't just rubber stamp that recommendation. The district court wrote its own explanation of two paragraphs of why the two images could be found strikingly similar by a reasonable jury. So I bring that up because while I'd love to take credit for it as counsel, this was the district court on its own evaluating the two images for it, applying the legal standard, and articulating why a reasonable jury could decide that they are strikingly similar. This is a district court working more than many district courts might do under the circumstances. And that's how that motion got denied. So I just want to make sure I understand the relevance of that. Given the way the district court resolves the fee application, which is to say, well, I denied pretrial motions, does that mean that when we're reviewing the district courts, we have this whole thing about the Fogarty factors and error of law and failed to afford the presumption of fees, et cetera, et cetera, et cetera. So we'll get to that, I'm sure. But I just want to focus for just a second on just the pretrial motions. Does that mean that our court should go back to the 12B6 stage or even further? We could talk about venue or whatever. But let's just use this as an example. Go back to the 12B6. The three of us would go back, look at these, and we say, well, I don't see the striking similarity. I mean, one's got a sniper scope thing, one's got a man and a woman, one's just got a man. They're holding different rifles and different postures. They're just different. And if we disagree with the striking similarity finding, that's sufficient to just reverse? Let me answer your question in two pieces. First, our question here, and the only question on this appeal, is based on the Copyright Act attorney fee language, which is the court may also award attorney fees to the prevailing party. It may, which means it is discretionary. So the only issue before this court is whether the decision to not award fees was an abuse of discretion. And I plan to talk about that, but I know I don't have to before this panel because everyone knows those standards. So the issue is not go back and regrade the paper on the 12B6 decision. It's given that 12B6 decision and the entirety of this record because that 12B6 decision wasn't the sole basis for the denial of attorney fees. Well, the thing that's odd is the whole point of the denial of fees is like, hey, listen, this was a big case. It went on forever, a big trial. But if we say, actually, no, it should have just been the complaint should have been dismissed at the 12B6 stage, then it seems like the district court is inviting us to make that relevant determination and to say that's the reason. If the reason for denying the fees is, hey, I let it go to trial, then I would think that we could reach a contrary determination by saying it shouldn't have gone to trial. You see what I mean? I understand that in terms of how the overall case was handled, yes. But in terms of did the court abuse its discretion in not awarding attorney fees, the U.S. Supreme Court has said that decision is based on the four fogarty factors as a non-exclusive list. So we have to look at the overall record, and the court is correct. This was a hard-fought case. There were a lot of motions. There was a lot involved. It was an interesting case. We didn't find out that it wasn't strikingly similar until the jury came back. But the decision that the district court had to make was to be based on the entire record, not whether one ruling was right or wrong. So if the district court was, assume our view that the district court was wrong in its early ruling, could it still be found not to have abused its discretion? Absolutely. How? Well, because the original ruling was simply on the pleadings. And so it was raised again, the striking similarity issue, after the evidence was closed in a motion for summary judgment that was largely based on that argument. They also raised in that same motion, as counsel has referred to, their own evidence of what they say was independent creation. And I can go off on the rabbit trail of why everything they put on was not really about the artwork. It was about the character that was used inside the game itself, and that's different from the artwork they used to promote the game. But with that full summary judgment evidentiary record, the magistrate judge recommended against granting the summary judgment, and again the district judge agreed with that and wrote a reasoned opinion on why. So that evidence was also before not just, and when we say the district judge, there's one district court, but we have two people actually making these decisions and deciding that there could be striking similarity in the eyes of a reasonable jury. Can I ask this question? I assume you agree with your friend on the other side that digital drilling, our published decision from our court two years ago, it says that, and it provides the relevant legal standard, which is that these fees should be awarded routinely, right, not as a matter of course, not in every single case, but the rule, the general rule, is that Congress in Section 505 has overturned the American rule, reestablished the British rule for these particular sorts of disputes, and absent some compelling circumstance, the fee should be awarded to the prevailing party. So that's the relevant legal standard. Are we on the same page so far? Well, actually, when Positive Black Talk is a perfect example, and Kurt sang and followed that, we are not in the British rule, which says you always get attorney's fees from the prevailing party. And so you do have to look at each case, case by case, and we have to look at the four non-exclusive factors, and the courts are entitled to look at other factors as well. Fair point. Kurt sang points this out too. It's not that you overturned the American rule. Congress didn't overturn it. They just modified it. So it's a different rule than we normally apply. And so we have said in cases like digital drilling, fees should be awarded, quote, unquote, routinely. And you did say, the court has said that many times. It's said it since Fogarty to make it clear that this court at least doesn't think that Fogarty set those cases aside. So the district court doesn't even acknowledge that as the relevant legal standard. So isn't that enough to at least remand? No, Your Honor, because the relevant legal standard still is set by the United States Supreme Court. Do you think digital drilling is inconsistent with Supreme Court precedent? It's not on its own terms. It is as argued by Activision, because Activision takes that matter of routine, and they argue that there is a presumption that fees should be awarded. That's a much bigger step. That's a much stronger standard to argue. But the matter of routine, if you have evidence of some combination of the Fogarty non-exclusive factors and an overall record that supports the purposes of awarding attorney's fees, which are to – there are many of them set out in Fogarty, but the purposes are – do we want parties to raise issues and bring cases before us that help develop the law and that help other people out there know what the law is? And if that isn't done, and if we have a frivolous case, a groundless case, or as the, frankly, crazy facts in the compact versus ergonomic case, a totally out-of-control party or set of lawyers who do things like try to get the judges prosecuted, that sort of thing can mandate attorney's fees. But it's a balance, and it's the balance of those Fogarty factors that I think, if you just look at the isolated phrase, they should be awarded routinely, that doesn't really acknowledge that balance. So if there's a question here of who's stating the standard, Judge Schroeder stated the Fogarty and Kurtzang standard. That comes from the Supreme Court. I don't think that failing to say they should be – in any way detracts from his exercise of discretion. Can you address the Fogarty factors? Your opposing counsel says that the district court failed to analyze several of the factors. It's very – it's a short answer just as the district court gave. The other factors, which are either the bad motive or bad faith in bringing the claim or asserting a defense, and the need for compensation and deterrence, the district court said, and this is at Record 3934, those arguments by Activision were underpinned by Activision's argument for objective unreasonableness. That is a fair characterization of Activision's motion because they really didn't bring any evidence of bad faith or any need for compensation and deterrence. They rehashed their arguments that we brought an objectively unreasonable claim. So what Activision was saying there is there's a need for compensation and deterrence because it's an objectively unreasonable claim. It was motivated by bad faith because they brought an objectively unreasonable claim. And we raised this in our brief. The reply didn't point to any actual evidence of these factors. The district court carefully looked at this and I think accurately described their position. The fourth Fogarty factor, by the way, was it a frivolous claim. Activision acknowledges they didn't claim that this was ever a frivolous case. We're looking at Fogarty. We're looking at cases like the Fifth Circuit's matter of routine holdings. But we still need to go back, we believe, to a U.S. Supreme Court decision, I think in 2013 or 15, Marks v. General Revenue Corporation. Every applicant for attorney fees has the burden of proving under whatever standard there is that they're entitled to them. So Activision doesn't get to say the routinely awarded means strong presumption, which means we win unless you disprove this. They were the applicant. They had to come forward with evidence on those other factors if they wanted the court to consider those factors. They didn't come up with anything other than a rehash of their objective and reasonable arguments. What really we all know the standards. Abuse of discretion required to not abuse of discretion, a court must accurately articulate and apply the relevant standard. The judge here did that. He also did things that this court has approved. He listened to the arguments of the parties, considered the arguments of the parties, addressed the arguments of the parties in his written opinion. That's how a court should show that it's not abusing its discretion. And I would just ask the court if there's any doubt about this, the transcript, it's called transcript number eight in the record, and it's the transcript of the hearing that was held on the cost and attorney fee application. It runs about 50 pages. First, we had a hearing. Most of these issues in district courts today are not decided with a hearing, but the judge here gave the parties a hearing. If the court will take the time to just skim through that transcript, what the court will see is a judge who has clearly read everything before him before the hearing. He was asking questions about specific cost issues and what backed him up. He gave the parties ample opportunity to make their arguments, to respond to the arguments of the other side. If the court searches for the court, the court can look at the district court's questions and comments during that hearing, and they're respectful. They let the parties know where the court was going, what was of concern to the court. This was a proceeding, and it might be considered a routine proceeding, but it was a proceeding where this district court treated the parties and the attorneys the way that, hopefully, all district courts treat the parties and attorneys before them. I think if the court reviews that transcript along with the rest of the record, the court will agree that this district court treated the parties and the issues with the respect that they deserve. And if the court does that, we think the court will affirm. Thank you. I want to address three points that my friend Mr. Zumo made in his opposition. The first is to clarify that the rule rather than exception standard in the Fifth Circuit is not contradictory to Fogarty and Kurtzang and their teachings. Digital drilling discusses this. It actually says against the backdrop of Fogarty, we have this additional parameter for exercising discretion in the Fifth Circuit is the rule rather than the exception framework. So those are both parameters applied to the trial court to guide its exercise of discretion. The second point I wanted to address is that the facts and arguments before the trial court were sufficient, again, to enable the trial court to determine that each of the remaining Fogarty factors, motivation, compensation, and deterrence, tilted in favor of an award of attorney's fees. In particular, with respect to motivation, ActiVision itemized a number of instances of litigation conduct from which the trial court could infer bad faith. None of those instances depended on whether or not the trial court agreed that plaintiff's case was objectively reasonable or objectively unreasonable. With respect to deterrence... I'm sorry, would you be more specific what you just said about litigation conduct? Litigation conduct. Yes, Your Honor. ActiVision identified a number of instances of plaintiff's behavior from which the trial court could infer bad conduct, including but not limited to plaintiff's failure to contact ActiVision before filing the complaint in order to ascertain whether his suspicions had any factual support, plaintiff's failure to respond to ActiVision's two letters sent in August of 2019 and in March of 2020. It's coming back. I got it. Would you like me to list other examples? Would that be helpful for the court? No. Okay. Thank you, Your Honor. With respect to deterrence, there was also fact and argument before the court to enable it to determine that deterrence tilted in favor of an award of attorney's fees. Under CURT SANG-2, a court can award attorney's fees in order to deter litigation misconduct, such as the examples we've pointed to in our brief before the trial court and before this court. And finally, with respect to compensation, ActiVision explained in its brief before the trial court that an award of attorney's fees in this case is its only award for litigating for two years and proceeding to a complete victory at trial. ActiVision also explained that under CURT SANG-2 and Fogarty, it is equally as important to incentivize plaintiffs to bring meritorious lawsuits as it is to incentivize defendants to pose meritorious defenses. What you're saying is you're asking us to reweigh all of this and use our discretion on these factors instead of the trial court's. I'm having a hard time seeing how we really can say the trial court abused its discretion when it weighed these factors. But, Your Honor, the trial court did not weigh these factors. It only analyzed objective reasonableness. It ignored all of the independent facts and arguments that ActiVision raised with respect to the remaining Fogarty factors. So it's not a matter of reweighing, Your Honor. Forgive me. It's a matter of asking the trial court to exercise its discretion appropriately. Well, it said it did analyze the other factors. So you're saying they didn't show their work on the paper? Because that's not required under Bridgman. Bridgman specifically says the court does not have to show. It makes our job easier if it does show its work. But it tells us it considered the factors. It said why the factors don't win and tied it to unreasonableness, but said it did consider the factors. We know they had a hearing. How do we know the court didn't really consider the factors? The court's articulation of its reasoning with respect to the other Fogarty factors makes it very difficult for the Fifth Circuit to determine whether the court appropriately exercised its discretion. I totally agree with the court. Oh, go ahead. It would be easier if there were big paragraphs, but I'm not criticizing. Certainly. And we cite to authority in, I believe it's our opening brief, but it may be our reply brief, that a trial court, while it may not be obligated to show the entirety of its work, it is obligated to give the Fifth Circuit or the reviewing court enough information concerning its reasoning to enable the reviewing court to determine whether the trial court did, in fact, abuse its discretion. With all respect to Judge Schrader, that is not the state of the order he offered. Okay, what do you do with Bridgman that says the court cited and applied the relevant authorities, and it said the ward promotes the purposes of the Copyright Act, and that was enough in the Bridgman case. And it not only was enough in that case, but the court wrote to say that's okay. I see that my time is up, but if you'll permit me, I'd like to answer your question. The analysis in Bridgman is distinguishable from the analysis here. It was more substantial there. Here the court did not analyze the non-objective reasonableness Fogarty factors. And unless, forgive me. Thank you, Counsel. Thank you very much.